STATE, RESPONDENT, v. HOVLAND, APPELLANT.

No. 8609

Submitted February 21, 1946. Decided March 29, 1946.

169 Pac. (2d) 341

Mr. Howard C. Gee, of Lewistown, and Mr. George E. Hurd, of Great Falls, for appellant.

Mr. J. E. McKenna and Mr. Aaron R. Shull, both of Lewistown, Mr. R. V. Bottomly, Atty. Gen., and Mr. Clarence Hanley, Asst. Atty. Gen., for respondent.

MR. JUSTICE ANGSTMAN, delivered the opinion of the court.

Defendant was accused of willfully, unlawfully and wrongfully operating and running, as the owner, a certain slot machine for money. The information charged the offense to have been committed on or about December 22, 1944. At the trial the state elected to select December 2nd as the date of the offense. Trial resulted in a verdict of guilty. A motion for a new trial was denied. Defendant appealed from the judgment imposing a $500 fine and from the order denying a new trial.

Defendant contends that the evidence was and is insufficient to show that he committed any crime under the laws of Montana which point was properly raised by him.

The evidence discloses that Post No. 1703 Veterans of Foreign Wars of Lewistown is a part of the national fraternal organization of Veterans of Foreign Wars; that about June, 1944, the members of the post decided to and did start a club for the use of the members of the post where they could obtain drinks to be consumed on the premises and indulge in gambling among their members.

Defendant was selected by the directors of the club as manager. He furnished the money with which to purchase a bar, furniture and fixtures, slot machines, stock of goods and licenses. The cost of the various items was charged to the club or post by the defendant's act in turning them in to the bookkeeper. Defendant was to receive 75 per cent. of the proceeds resulting from the operation of the club and the club, 25 per cent. The evidence is conflicting as to how long this arrangement should last.

Defendant contended that he was to receive 75 per cent. for three years and then only 50 per cent. for two more years. But on behalf of the state, the testimony was as follows:

"Q. Then substantially what you agreed upon was that Mr. Hovland was to be the Manager of the Veterans' Club, that he was to advance to the Club all moneys required to put it in operation, that the bar and the slot machines and the fixtures were to be paid for out of the net proceeds of the Club? A. That's right.

"Q. And then when that debt was paid Mr. Hovland would share, after all the obligations between the Club and you were paid, in the net proceeds. That was agreed upon at that time, wasn't it? A. Well, we talked of this and laid the foundation on that principle."

Hence there was room for a finding by the jury that the arrangement would last indefinitely, or at least for the full five-year period regardless of when defendant had returned to him the money which he advanced.

The grand opening of the club took place on July 29, 1944. The club was later incorporated, the certificate of incorporation being issued by the Secretary of State on August 21, 1944. The members of the post, the auxiliary and employees of the club automatically became members and memberships otherwise were obtained upon application and the payment of annual dues of $1 and upon approval of the membership comittee and board of directors.

There was evidence that defendant in operating the club chose his own method and ignored the wishes of the board of directors and failed to comply with the by-laws. There was evidence that he allowed persons who were not members to frequent the place and enjoy the same privileges as members, including that of playing the slot machines, contrary to an express provision in the by-laws.

There was evidence that he refused to respect the wishes of the board of directors in the manner in which he handled the financial affairs of the club. He refused to tape the cash

register so that it would keep an account of the respective sales; he failed to respect their wishes that the payment of bills be made by check and not by cash; and he told them that he would run the place to suit himself and proceeded to do so.

The evidence was sufficient to warrant the jury in finding the defendant guilty of running slot machines contrary to Chapter 153, Laws of 1937. That Chapter excludes "any religious, fraternal or charitable organization, and all private homes" from the provisions of the Act. There was sufficient evidence here however, if believed by the jury as it evidently was, to sustain a finding that defendant was operating the machines as a joint operator with the veterans' organization.

The statute merely excludes the organizations named and does not exclude an individual who shares in the profits and who to all intents and purposes operates as he pleases and not in conformity with the by-laws of the organization and without regard to the right of the governing body of such excluded organization. We find no merit in the contention that the evidence is insufficient in substance to sustain the jury's verdict. Specifically, defendant contends that the evidence is insufficient to sustain the allegation that defendant operated the slot machines as owner. The allegation "as owner thereof" does not restrict or enlarge the scope or meaning of the information which otherwise sufficiently charged defendant with running and operating the machines and will be treated as surplusage. State v. Tudor, 47. Mont. 185, 131 Pac. 632. And see State v. Duncan, 40 Mont. 531, 107 Pac. 510; State v. McGowan, 36 Mont. 422, 93 Pac. 552.

As above noted the state elected to select December 2nd, 1944, as the date of the alleged offense. Defendant contends that the court erred in admitting evidence tending to show offenses as of other times. The rule is well settled that evidence of other like crimes is admissible for the purpose of showing a scheme or plan to commit a series of related crimes and absense of mistake or accident. State v. Ebel,

92 Mont. 413, 15 Pac. (2d) 233. This rule is general, 22 C. J. S., Criminal Law, sec. 691, p. 1139.

Defendant contends that there was not a prima facie case made out as to the other offenses so as to lay a proper foundation for the admission of the evidence. This contention is without merit. Defendant was in control of the operations from the time they were commenced until he was discharged on December 18th. The evidence showing the plan of operations during all that time was admissible within the general rule above stated to show whether there was but accidental or unintentional violation of the law or whether it was intentional.

It is contended that the only proof of any crime committed on December 2nd was the fact that two salesmen whose names were not given and who were not members of the organization played the slot machines on that day. From what has been said above, since defendant was in legal effect a joint operator of the slot machines he is subject to, and not excluded from the provisions of section 1, Chapter 153, Laws of 1937, and it matters not whether non-members were permitted to play the machines or not.

Evidence of the fact that non-members were permitted to play was admissible however as tending to show that defendant and not the club controlled the policies of the organization with respect to the manner in which the affairs were conducted.

Defendant also contends that the court erred in permitting evidence tending to show the internal affairs of the veterans' club. That question was considered in State ex rel. Bottomly v. Johnson, Mont., 154 Pac. (2d) 262. Here the evidence complained of was admissible as tending to show whether defendant or the veterans' club was controlling the policies and running the affairs of the club. There was no violation of the rule prohibiting investigation into the internal affairs of the corporation in other than quo warranto pro-

ceedings. Also that rule could be invoked only by the corporation.

Complaint is made that the court gave the following instruction over defendant's objection: "You are instructed that an owner is one who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases, to the exclusion of others, even to spoil or destroy it, or dispose of it as he sees fit, as far as the law allows or permits, unless he be prevented by some agreement or covenant which restrains him from that right." We fail to see how this instruction if erroneous, could have been prejudicial to any substantial right of defendant particularly since it was not incumbent upon the state to prove ownership in defendant and which he contends was not done.

Complaint is also made that evidence was received over defendant's objection which should have been excluded. The state, in reliance upon the holding in Bottomly v. Johnson, supra, contends that the judgment should be sustained if there is sufficient competent evidence to justify the verdict even though incompetent evidence may have been admitted. The State ex rel. Bottomly case was one in equity tried to the court without a jury and where it is proper to presume that incompetent evidence was disregarded. That rule cannot apply to a criminal case tried to a jury.

However our study of the record does not indicate that there was incompetent evidence received of such a character as to prejudice any right of defendant.

The judgment and order appealed from are affirmed.

Mr. Chief Justice Johnson, and Associate Justices Morris, Adair, and Cheadle, concur.

Rehearing denied May 31, 1946.