**FILED**

12/27/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0670

DA 22-0670

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 250

360 RECLAIM, LLC, a Montana limited liability company,

> Plaintiff and Appellee,

v.

WILLIAM M. RUSSELL, an individual, and MOUNTAIN
VIEW INVESTMENTS, L.C., an Idaho limited liability company,

> Defendants and Appellants.

_____

360 RECLAIM, LLC, a Montana limited liability company,

> Defendant, Counter-Plaintiff and Third-Party
> Plaintiff, and Appellee,

v.

WILLIAM M. RUSSELL,

> Counter-Defendant and Appellant,

and

U.S. TREASURY by and through the INTERNAL
REVENUE SERVICE,

> Third-Party Defendants.

_____

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-19-305 B
Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

For Appellant William H. Russell:

William M. Russell, Self-Represented, Pocatello, Idaho

For Appellant Mountain View Investments, L.C.:

Nicholas J. Lofing, Garlington, Lohn & Robinson, PLLP, Missoula, Montana

For Appellee:

Kristin L. Omvig, Benjamin J. Hammer, Omvig Hammer Law, P.C., Kalispell, Montana

Submitted on Briefs: July 19, 2023

Decided: December 27, 2023

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     William Russell (Russell) and Mountain View Investments, LLC, (MVI), appeal the judgment of the Eleventh Judicial District Court, Flathead County, entered in favor of 360 Reclaim, LLC (360 Reclaim).  We reverse and remand for findings and conclusions to be made by the District Court consistent with this decision.

¶2     We restate the dispositive issue:

*Did the District Court err in determining 360 Reclaim could include abatement and cleanup costs as maintenance expenses under § 25-13-802(3), MCA?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     The real property at issue, a twenty-acre parcel of land located near Columbia Falls, Montana, (Property), has a long and tortuous legal history and has been the subject of several proceedings before this Court.  See *KS Ventures, LLC v. Russell*, 2019 MT 4N, 395 Mont. 519, 432 P.3d 715 (*KS Ventures*); *Russell v. 360 Reclaim, LLC*, 2019 MT 178N, 397 Mont. 552, 455 P.3d 441 (*Russell I*); *360 Reclaim, LLC v. Russell*, 2020 MT 136N, 400 Mont. 559, 463 P.3d 460 (*Russell II*).  Relevant to the instant proceeding, Russell purchased the Property for $700,000.00 in 2010 and defaulted on loan payments secured by the Property.  In March of 2018, the District Court ordered that the Property be foreclosed and sold at a sheriff's sale.  Larry Matson (Matson), through his salvage company, 360 Reclaim, purchased the Property on June 1, 2018, for $100,000.00 at the sheriff's sale.

¶4     On June 12, 2018, 360 Reclaim arrived at the Property with police and forcibly evicted Russell.  Russell was arrested and charged with criminal trespass and obstructing

3

a peace officer; charges which were later dismissed. Russell contended he had a right of possession during the redemption period which we addressed in *Russell I*.[1] Following Russell's removal, 360 Reclaim assumed possession of the Property which it has held to this day.

¶5 The Property is a scrap yard. At the time of sale, the Property had items belonging to Russell that included, by way of example, buses; approximately 50 junk vehicles; trailers; equipment; forklifts; piles of tires; crushed trailer homes; firewood; and hazardous contaminants. Russell also kept his personal papers and items belonging to his girlfriend on the Property. Russell alleges that after being forcibly removed from the Property he was unable to retrieve his personal items and that 360 Reclaim refused to return them. 360 Reclaim maintained they had accommodated Mr. Russell in every way they could. Starting on June 18, 2018, 360 Reclaim began charging Russell $500.00 per day in storage fees. This amount was increased to $1,000.00, beginning July 16, 2018.[2] 360 Reclaim described these fees as "a very minimal amount of money for what is considered to be on that 20 acres." The scrap and salvage material located on the Property apparently has significant value.

¶6 During his years of ownership, Russell was cited multiple times for violating Flathead County Ordinance No. 6, the county's public nuisance ordinance. Russell failed

---

[1] On appeal, Russell again raises whether he was entitled to remain on the Property during the redemption period. We will not address this issue as it has already been litigated and resolved in *Russell I*.

[2] On June 28, 2022, the District Court issued an order finding that 360 Reclaim was "entitled to $250.00 per day from and after June 18, 2018 through June 21, 2021. . . ."

to bring the Property into compliance and was subsequently convicted in 2016 for violating the ordinance. After taking possession of the Property, 360 Reclaim was also cited for violation of Ordinance No. 6 on June 1, 2018. The county instructed 360 Reclaim to abate the nuisance by "means of removal or shielding of the conditions," and that time for abatement could be extended through submission of an abatement plan. When 360 Reclaim remained noncompliant, the county sent another letter on December 6, 2018, advising that no abatement had occurred and giving 360 Reclaim 10 days to provide information concerning its abatement plan. On March 21, 2019, the county acknowledged and approved 360 Reclaim's abatement plan, which had been provided on March 19, 2019, but advised 360 Reclaim that approval by the Department of Environmental Quality (DEQ) was also necessary. On March 28, 2019, the DEQ sent 360 Reclaim a letter citing several DEQ violations.

¶7     During the redemption period from June 2018 until June 2019, 360 Reclaim began removing, shipping, and selling salvage materials from the Property. 360 Reclaim hired LM Construction to handle the cleanup. LM Construction is owned by 360 Reclaim. 360 Reclaim cleaned the shop building, removed garbage, paid the utilities, and paid for propane to keep the buildings heated. Russell claims that once 360 Reclaim came into possession of the Property they began removing, scrapping, and salvaging his property to turn a profit. For example, Russell claims that 360 Reclaim sold containers of metals valued at $4,406.75 in July of 2018 to Pacific Steel. 360 Reclaim does not dispute this and, in fact, acknowledges that Russell is entitled to a credit in this amount. 360 Reclaim

5

similarly acknowledges that Russell is entitled to a credit of $200.00 for Reclaim's sale of a push mower. There are other instances in which Russell and MVI assert appropriate amounts were not credited, such as 360 Reclaim's failure to offset $4,000.00 in tenant rents it collected and an ATV 360 Reclaim took possession of valued at $8,000.00.

¶8     On June 3, 2019, Russell, through MVI, attempted to redeem the Property by wiring funds in the amount of $117,000.00 to the trust account of 360 Reclaim's counsel. Russell calculated the amount to include the purchase price of $100,000.00, one year's interest at 7.5% ($7,500.00), taxes ($7,243.58), and added a "safety margin" ($2,256.42). The payment was rejected, however, as 360 Reclaim believed it was insufficient. 360 Reclaim calculated a different redemption amount of $486,959.77. 360 Reclaim arrived at this total by adding together the $100,000.00 purchase price, $334,000.00 in storage fees, $7,479.45 in interest, $125.96 for the cost of purchasing padlocks to secure the Property, $502.64 in liability insurance payments, $8,587.55 in property taxes, $38,147.65 for cleanup work that LM Excavating had completed on the Property, $866.51 for the cost of propane, and $1,856.75 in electrical fees. While noting that the sale to Pacific Steel of metals and a mower was not included as an expense which increased the redemption price, Russell claims 360 Reclaim did not offset the redemption price by the amount $4,406.75 and $200.00. Additionally, Russell was notified that he would continue to be charged $1,000.00 per day for storage fees and that the per diem interest would accrue at a rate of $20.55 per day until paid in full.

6

¶9　On June 4, 2019, 360 Reclaim filed motions for a restraining order and preliminary injunction in the District Court. 360 Reclaim argued Russell had failed to timely and properly redeem the Property within the one-year redemption period authorized by § 25-13-802, MCA, as the $117,000.00 he wired was insufficient. 360 Reclaim also argued Russell had broken into the Property following 360 Reclaim's rejection of the redemption amount. The District Court granted 360 Reclaim a restraining order on June 11, 2019, and a preliminary injunction on July 10, 2019. This Court affirmed the preliminary injunction on May 26, 2020. *Russell II.*

¶10　In a separate but subsequently consolidated proceeding, the District Court considered the issue of storage fees. On November 11, 2021, the court issued an order concluding that 360 Reclaim was acting as custodian of property owned by Russell and was therefore entitled to be paid storage costs pursuant to § 71-3-1201, MCA.[3] Contrary to 360 Reclaim's assertion that $1,000.00 per day in storage costs was reasonable, the District Court determined a reasonable storage cost was $250.00 per day.

¶11　In August of 2022, 360 Reclaim and MVI filed cross-motions for summary judgment. The District Court reasoned the dispositive issue was whether 360 Reclaim was

[3] The court entered an extensive order July 11, 2021, in which it concluded that § 71-3-1201, MCA, provided the basis for 360 Reclaim to secure a lien and foreclose on Russell's personal property. On appeal, Russell faults the District Court on the singular basis that it referred to the storage lien as an "agister's lien" which is provided for in § 71-3-1211, MCA. While the court did, at times, refer to it as an agister's lien which can only apply to livestock, it is clear from review of the court's order that the basis for 360 Reclaim's lien, requested as well in 360 Reclaim's counterclaim, was through invoking the provisions of § 71-3-1201, MCA. Further, the question of whether the District Court's conclusion that storage costs are not properly a part of the redemption price has not been disputed on appeal.

entitled to payment for cleanup costs under § 25-13-802, MCA, upon redemption. In an order granting summary judgment to 360 Reclaim, the District Court first noted that it would "not consider [storage fees] for purposes of this analysis as they had not yet been judicially determined. . . ." However, in a footnote it was clarified that "[a]t its November 11, 2022, hearing the Court *sua sponte* determined it would not apply storage fees to the redemption price." The District Court next held:

> "[T]he amount of the purchase ($100,000.00), interest ($7,541.10), taxes ($8,587.55), and other expenditures such as padlocks ($125.96), liability insurance ($502.64), electricity ($1,856.75), and propane ($866.51), combine for a redemption price of $119,480.51. Russell paid $117,000.00 to redeem the property on June 3, 2019. Whether Russell's redemption substantially complied with timeliness requirements, full redemption payout requirements, and filing requirements is moot if Reclaim's $38,147.65 clean-up costs are included under "maintenance expenses" as stated in § 25-13-802(3), MCA. If they are, Russell cannot argue $117,000[.00] substantially complies with a needed redemption payment of $157,628.16 ($119,480.51 + $38,147.65) since Reclaim would be "injured or adversely affected" by a difference of over $38,000.00. (internal citations omitted)

¶12 The District Court concluded that "maintenance expenses" did include cleanup costs and that Russell's redemption was therefore invalid.

¶13 Russell and MVI appeal.

## STANDARD OF REVIEW

¶14 We review a district court's "summary judgment rulings de novo for conformance to the applicable standards specified in M. R. Civ. P. 56." *Lawrence v. Pasha*, 2023 MT 150, ¶ 8, 413 Mont. 149, 533 P.3d 1029. "Summary judgment is proper only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Pasha*, ¶ 8. "A genuine issue of material fact is a fact materially inconsistent with

8

proof of an essential element of a claim or defense at issue." *Pasha*, ¶ 8. The moving party "has the initial burden of showing a complete absence of any genuine issue of material fact on the Rule 56 record and that the movant is accordingly entitled to judgment as a matter of law." *Pasha*, ¶ 8. "[T]he burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue [of fact] does exist." *Osterman v. Sears*, 2003 MT 327, ¶ 17, 318 Mont. 342, 80 P.3d 435. When determining whether there exists a genuine issue of material fact, "all facts considered material in light of the substantive principles that entitle the moving party to judgment as a matter of law and all reasonable inferences are to be drawn in favor of the party opposing summary judgment." *Weber v. Interbel Tel. Coop., Inc.*, 2003 MT 320, ¶ 5, 318 Mont. 295, 80 P.3d 88.

## DISCUSSION

¶15 The redemption statute at issue is § 25-13-802, MCA, which addresses the time for redemption and the amount to be paid. Section 25-13-802, MCA, provides:

> The judgment debtor or redemptioner may redeem the property from the purchaser any time within 1 year after the sale on paying the purchaser:
> (1) the amount of the purchase with interest at a rate established by the judgment in the action that led to the execution sale, up to the time of redemption;
> (2) the amount of any assessment or taxes that the purchaser may have paid on the property after purchase and interest on that amount;
> (3) the amount of any repairs, maintenance expenses, or other expenditures that the purchaser may reasonably have made after purchase for the maintenance of the property, with interest on the amounts from the date of expenditure; and
> (4) if the purchaser is also a creditor having a prior lien to that of the redemptioner other than the judgment under which the purchase was made, the amount of the lien with interest.

Thus, as relevant here, § 25-13-802, MCA, provides for a one-year redemption period, interest on the purchase price, taxes and interest on the tax amount, and maintenance

9

expenses for the property. The parties dispute on appeal only the issue of maintenance expenses.

¶16     We have consistently held that "redemption statutes are remedial in nature and are to be liberally construed and that in the absence of some form of prejudice to parties involved, substantial compliance with redemption statutes is sufficient to affect a redemption in connection with mortgage foreclosure." *Savoy v. Cascade Cty. Sheriff's Dept.*, 268 Mont. 507, 513, 887 P.2d 160, 164 (1994). Further, "foreclosure is in the nature of a forfeiture, which the law does not favor." *Savoy*, 268 Mont. at 513-14, 887 P.2d at 164. Consistent with the foregoing:

> [R]ules and statutes dealing with redemption are regarded as remedial in character and should be given liberal construction and application to permit a property owner who can pay his debts to do so, and thus make his creditor whole, and save his property. Therefore, if a debtor, acting in good faith, has substantially complied with the procedural requirements of the rule in such a manner that the lender mortgagee is not injured or adversely affected, and is getting what he is entitled to, the law will not aid in depriving the mortgagor of his property for mere falling short of exact compliance with technicalities.

*Savoy*, 268 Mont. at 514, 887 P.2d at 164 (quoting *United States v. Loosley*, 551 P.2d 506, 508 (1976)). "In taking possession of the property the buyer is taking a calculated chance that the mortgagor will be unable to redeem and thus the buyer may have gained the property at a bargain price." *Lester v. J. & S. Inv. Co.*, 171 Mont. 149, 153, 557 P.2d 299, 301 (1976). "When the mortgagor redeems the property, and the buyer has had it managed by someone, that is part of the price of his investment -- a chance that he takes." *Lester*, 171 Mont. at 153, 557 P.2d at 301.

10

¶17    Section 25-13-802(3), MCA, provides that a redemptioner must pay the amount of any repairs and maintenance expenses, "for the maintenance of the *property*." (Emphasis added). "Property," under the redemption statutes, means the *real property* purchased at the foreclosure sale, not the personal property of the debtor. Thus, in construing § 25-13-802, MCA, we cannot insert what has been omitted by holding that "property" includes both real *and* personal property. Part 8 and the redemption statutes contained therein deal only with the redemption of *real* property and, indeed, Part 8 is titled "Redemption of Real Property." Further, Part 7, which addresses sale and execution upon foreclosure, sets forth the interest transferred, which notably does not include personal property: "[u]pon a sale of real property, the purchaser is substituted to and acquires the right, title, interest, and claim of the judgment debtor thereto. . . ." Section 25-13-710, MCA. Accordingly, "maintenance expenses" must be for maintenance of the real property and not maintenance of the redemptioner's personal property.

¶18    Here, 360 Reclaim's expenses are related to the cleanup of personal property created by Russell on his real property. 360 Reclaim's expenses are not attributable to maintenance of the real property; rather 360 Reclaim purchased the real property knowing of its condition and the personal property that was there. 360 Reclaim took a calculated risk based on a bargain price at the foreclosure sale. 360 Reclaim, in the salvage business itself, knew the property was a scrap yard littered with Russell's personal property. 360 Reclaim cannot add to the redemption price expenses for cleaning up Russell's personal property, which are not provided for in the redemption statute and which would be inconsistent with

11

the requirement to broadly construe redemption statutes to allow debts to be repaid and the general disfavor in the law of foreclosure. Redemption statutes are remedial in nature and must be construed broadly. 360 Reclaim seeks a windfall by pursuing both storage costs and $38,147.65 in cleanup costs as part of the redemption price. The District Court's decision that storage costs are not part of the redemption price does not mean that 360 Reclaim must store Russell's personal property without recourse. However, 360 Reclaim is not entitled to claim cleanup costs for Russell's personal property as part of the redemption price.

¶19    Having concluded that the District Court erred by including cleanup costs as maintenance costs, the question remains whether Russell's tendered redemption price of $117,000.00 was valid. The parties do not dispute the purchase price, interest rate, or tax amount under § 25-13-802, MCA. Neither does any party dispute the amount of 360 Reclaim's cleanup costs. In 360 Reclaim's summary judgment motion, it provided a breakdown of what it believed Russell owed. 360 Reclaim represented that the total redemption cost was $240,771.41, which included $38,147.65 in cleanup costs and $87,750.00 in storage costs. If cleanup costs were improperly included, as we determine they were, and storage costs are not included in the redemption price, as the District Court ordered, then 360 Reclaim's redemption, based on 360 Reclaim's figures, is reduced to $114,873.76. The District Court, however, found that if storage costs and cleanup fees were excluded, the redemption amount would be $119,480.51[4] Based on the District

[4] We note that the difference between $119,480.51 and $114,873.76 is over $4,606.75, the amount Russell claims he was owed for the sale of the scrap metal and the mower. It appears the District

Court's calculations, Russell's tendered redemption amount of $117,000.00 fell short $2,480.51 of the amount 360 Reclaim argued they were entitled to. Putting aside whether Russell's tender of $117,000.00 "substantially complied" with a redemption price of $119,480.51, we note that Russell and MVI maintain the redemption price did not consider various credits that would reduce the redemption price. Russell maintains he was not credited for the $4,406.75 sale of metals to Pacific Steel, the $200.00 sale of his mower, tenant rents in the amount of $4,000.00, and a converted ATV valued at $8,000.00. Accordingly, we remand for the District Court to determine what credits, if any, Russell and MVI are entitled to against the redemption price and whether Russell's offer of redemption was in substantial compliance with the redemption statutes. Further, from our review of the record, we do not discern there were any objections made that specific items of the $38,147.65 in cleanup costs were attributable only to real property or only to personal property. Rather, the parties argued generally that all cleanup costs related *either* to real or personal property.

## CONCLUSION

¶20 We conclude that "maintenance expenses," as used in § 25-13-802(3), MCA, does not include cleanup costs for the removal of a redemptioner's personal property.

¶21 Reversed and remanded for findings and conclusions consistent with this decision.

/S/ LAURIE McKINNON

Court did not credit Russell this amount. However, the District Court will be able to make any necessary clarifications on remand.

We Concur:

/S/ JIM RICE
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA

Justice James Jeremiah Shea, concurring.

¶22 I concur with the Court's analysis and resolution of the dispositive issue and with the Court's decision to remand this matter for the District Court to determine what credits, if any, Russell and MVI may be entitled to against the redemption price. Opinion, ¶ 19. Since the matter is being remanded for this purpose, I likewise concur that it is procedurally appropriate for the District Court to reassess, in light of this Opinion, whether Russell's redemption offer was in substantial compliance with the redemption statutes. Opinion, ¶ 19. I write separately because I think it bears noting that as it pertains to MVI's $117,000 redemption offer on Russell's behalf, within the context of the specific history of this case, I strain to conceive how the amount of the redemption offer did not substantially comply with what we have determined was a proper redemption amount of $119,480.51.

¶23 Russell's redemption offer amounts to 98% of what we have determined to be the correct redemption price—and that is before factoring in any potential credits to which Russell and MVI may be entitled. Opinion, ¶ 19. This is not to suggest that a redemption offer that amounts to 98% of the redemption price might always automatically constitute substantial compliance. "Substantial compliance" should not be mistaken for "close enough." If, for example, the redemption price is concrete and undisputed, even a liberal

14

construction of the redemption statutes may not necessarily allow the redemptioner to redeem by offering a lesser amount. But the redemption amount here was far from concrete or undisputed.

¶24 When MVI tendered the $117,000 redemption offer on Russell's behalf in June 2019, 360 Reclaim responded with a redemption amount of $486,959.77—more than four times what we have determined to be the correct redemption price. Opinion, ¶ 8. By the time 360 Reclaim and MVI cross-motioned for summary judgment in 2022, 360 Reclaim's calculation had been more than cut in half to $240,771.41—still more than double what we have determined to be the correct redemption price. While both parties' respective calculations may have missed the mark, 360 Reclaim was shooting at an entirely different target.

¶25 As the Court observes, this property has had a long and tortuous history, and in the annals of that history Russell is the author of much of his own misfortune. But that history is not the narrow issue before us. Redemption rules and statutes are "remedial in character and should be given liberal construction and application to permit a property owner who can pay his debts to do so, and thus make his creditor whole, and save his property." *Savoy*, 268 Mont. at 514, 887 P.2d at 164. Redemption rules and statutes are not intended to bestow a windfall upon any party. In that regard, if it is ultimately determined that Russell properly redeemed the property, 360 Reclaim may yet have a claim for reasonable costs expended during the term of its possession of the property that are not recoverable under the redemption statutes. As the Court notes, and as MVI acknowledges in its briefing on

appeal, there may be recourse in a separate action—for example, a claim for unjust enrichment.  360 Reclaim's remedy to recover these costs, however, does not lie within the redemption statutes.

/S/ JAMES JEREMIAH SHEA