FILED

11/12/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0504

DA 23-0504

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 264

D.A. DAVIDSON & CO,

      Plaintiff,

   v.

DONALD SLAYBAUGH on behalf and for the benefit of
THE WHITEFISH MASONIC LODGE 64 and
GRAND LODGE OF AF & AM OF MONTANA,

      Defendants.

GRAND LODGE OF AF & AM OF MONTANA,

      Cross-Plaintiff and Appellee,

   v.

DONALD SLAYBAUGH, on behalf of and for the benefit of
THE WHITEFISH MASONIC LODGE 64,

      Cross-Defendant and Appellant.

DONALD SLAYBAUGH, on behalf of and for the benefit of
THE WHITEFISH MASONIC LODGE 64,

      Cross-Claimant and Appellant,

   v.

GRAND LODGE OF AF & AM OF MONTANA,

      Cross-Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                 In and For the County of Flathead, Cause No. DV-2021-669D
                 Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Sean S. Frampton, Frampton Purdy Law Firm, Whitefish, Montana

For Appellee Grand Lodge AF & AM Montana:

G. Patrick HagEstad, David J. HagEstad, Attorneys at Law, Missoula, Montana

Kirk D. Evenson, Marra, Evenson & Levine, PC, Great Falls, Montana

Submitted on Briefs: May 8, 2024

Decided: November 12, 2024

Filed:

_____
Clerk

2

Justice Jim Rice delivered the Opinion of the Court.

¶1 Donald Slaybaugh (Slaybaugh) appeals an Order granting summary judgment to the Grand Lodge of Ancient Free and Accepted Masons of Montana (Grand Lodge), entered by the Eleventh Judicial District Court, Flathead County. The Order dismissed cross claims filed by Slaybaugh in an interpleader action brought by D.A. Davidson & Co. (D.A. Davidson), a dismissed party not present in this appeal. Slaybaugh argues the District Court erred by determining he lacked standing to bring claims against Grand Lodge in place of Whitefish Lodge 64 (Whitefish Lodge), on behalf of Whitefish Lodge, and in his individual capacity.

¶2 We consider the following issue:

*Whether Slaybaugh has standing to bring a claim against Grand Lodge for its revocation of Whitefish Lodge's charter and purported conversion of Whitefish Lodge's assets.*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 According to the summary judgment record, Grand Lodge is Montana's Masonic chapter, headquartered in Helena. Grand Lodge is a nonprofit corporation, is the supreme Masonic authority in Montana, and is vested with all legislative, executive, and judicial powers regarding the organization, defined and limited only by the provisions of its own Constitution and Code.[1] *See* Const. § 310. The Constitution and Code provide a system

---

[1] A copy of the Constitution and Code of Statutes of the Grand Lodge of Ancient Free and Accepted Masons of Montana (2019-2020) was provided to this Court as Appendix E to Appellee's Response Brief and is part of the record herein. References to the "Constitution" ("Const.") or "Code" concern this specific document and its terms.

of jurisprudence, including procedures for trial and appeal. *See* Const. §§ 5020(B), 5070; Code §§ 23030, 35030, 43010, et. seq. Additional authority of Grand Lodge includes:

A. To enforce discipline upon Masons and lodges;
B. To decide all controversies between any of the lodges or between one of them and a member or members of another lodge and review all matter of controversy or discipline which may have arisen in any lodge and over which the lodge has not retained original jurisdiction;
C. To charge fees to and levy assessments upon lodges;
D. To revoke the charter of a lodge; and
E. To take possession of a lodge's funds and property of every kind within three months of the suspension or revocation of the lodge's charter.

*See* Code §§ 320; 330; 360; 6010; 6020; 22050; 22070. Grand Lodge holds one meeting per year, which is called a "Communication." During the intervals between each annual Communication, the Grand Master possesses all Grand Lodge's "executive powers except granting of charters." Const. § 350. Only Grand Lodge itself, at a Communication, can reverse or modify the decisions of the Grand Master. Const. § 350.

¶4 There are several member lodges within the state that are chartered as associated lodges of Grand Lodge. Member lodges are also bound to the Constitution and Code of Grand Lodge. One such member lodge was Whitefish Lodge, which was chartered in 1906. Slaybaugh was a longtime member of Whitefish Lodge.

¶5 In 1997, Whitefish Lodge sold its Masonic Temple building in downtown Whitefish and deposited a sum of money into an account at Whitefish Credit Union. In 2013, the Lodge's funds were transferred to an investment account at D.A. Davidson. After the money was transferred, Whitefish Lodge appointed Slaybaugh as the named representative on the account and to oversee investment of the funds. Thereafter, Whitefish Lodge conducted business as usual, using the funds within the D.A. Davidson account to make

4

various donations to organizations within Flathead County, as well as to fund other investments.

¶6 In January 2020, James Blystone, who held the office of Worshipful Master and thus was the head of Whitefish Lodge, wrote an open letter to its members. Therein, he ordered several actions be taken, including that a check for $10,000 be sent to the Whitefish Christian Academy as a donation. He also ordered that "[e]ffective immediately, only elected officers ([Worshipful Master, Senior Warden, Junior Warden]) are the only individuals authorized to direct the lodge's investment account" and that "[a]ll other lodge members need to be removed from any signing authority on the account." He ordered the sale of stock held by the account, and a review of the account by a third party. Lastly, he advised the membership that he would be "demitting"—or resigning his Whitefish Lodge membership—and directed the Secretary to prepare his demit paperwork. Slaybaugh was apparently concerned that Whitefish Lodge membership was not fully informed about the donation to Whitefish Christian Academy, including that a child of a Whitefish Lodge Officer attended Whitefish Christian Academy. Thus, in response to the actions ordered by Worshipful Master Blystone, Slaybaugh emailed a copy of Blystone's letter to the Grand Master, head of Grand Lodge.

¶7 In response to Slaybaugh's email, the Grand Master met with the membership of Whitefish Lodge, after which he issued charges against the Lodge, arrested its charter, and exerted control of Whitefish Lodge's records and assets pending investigation. The charges issued by the Grand Master included disobedience of the Code, "[d]isregard of lawful authority of the Grand Master," and "neglect of the ancient and recognized usages

of the craft." Following the arrest of the charter, every officer of Whitefish Lodge demitted, and Grand Lodge commenced its investigation.

¶8     The investigation committee determined, among other things, that Whitefish Lodge had only 14 members residing in Montana, which it noted was insufficient for Whitefish Lodge "to properly continue to operate as an active lodge" pursuant to Code § 21010 (referencing "at least 15 Master Masons in good standing, residing in Montana").  The committee supported its conclusion by finding that all elected officers of Whitefish Lodge had demitted, and other lodges in the Whitefish area remained open for the members of Whitefish Lodge to join.  Thus, during Grand Lodge's June 2020 Communication, which was deemed an "Emergency Communication" because of meeting restrictions during the COVID-19 pandemic, Whitefish Lodge's charter was officially revoked.

¶9     Under the Code, "[t]he surrender or revocation of the charter of a lodge, when declared by Grand Lodge, shall be conclusive upon the lodge and its members; and all its funds . . . and property of every kind . . . shall be transmitted, within three months of the surrender or revocation, to the Grand Secretary."  Code § 22070.  Accordingly, after the Emergency Communication, on July 1, 2020, Grand Lodge advised D.A. Davidson that it was the rightful owner of the funds in the Whitefish Lodge account and requested that D.A. Davidson transfer the funds into a new Grand Lodge account, which it did.  Slaybaugh, ostensibly acting on behalf of remaining Whitefish Lodge members, contested the transfer of the funds and claimed the revocation of the Whitefish Lodge's charter by Grand Lodge was done in violation of the Code.  In response, D.A. Davidson filed a Complaint for Interpleader of the funds.  Grand Lodge answered the Complaint and brought a cross claim

6

asserting that neither Slaybaugh nor Whitefish Lodge had standing to be parties to the action. Slaybaugh responded by asserting cross claims against Grand Lodge for declaratory judgment, breach of contract, negligence, conversion, and interference with contractual and business relations, essentially claiming that Grand Lodge had failed to follow the procedures of the Code in revoking Whitefish Lodge's charter and exerting control over the funds. Grand Lodge answered Slaybaugh's cross claims, again asserting that neither he nor Whitefish Lodge had standing in the action. After discovery, Grand Lodge moved for summary judgment, contending the District Court should defer to Grand Lodge's application of its own Constitution and Code and dismiss the case for lack of standing. Slaybaugh filed a motion to compel certain discovery requests, and Grand Lodge responded by filing a motion for a protective order.

¶10 While these motions were pending, Grand Lodge filed a second motion for summary judgment, again arguing Slaybaugh lacked standing. The District Court agreed, reasoning that, "[e]ven if, as Slaybaugh suggests, [Whitefish Lodge's] charter was improperly revoked and, as such, the members of [Whitefish Lodge] never lost their ability to authorize Slaybaugh to act as their agent. . ., the plain language of the Code does not permit a member of a lodge to conduct or transact business of the lodge *individually*," and that "Slaybaugh did not have actual authority to act as [Whitefish Lodge's] agent with respect to the [D.A. Davidson account] because he was not the Treasurer or Secretary/Treasurer of the lodge." (Emphasis in original.) The District Court thus dismissed the action.

7

¶11 Slaybaugh appeals. Additional facts are discussed herein.[2]

## STANDARD OF REVIEW

¶12 "This Court reviews a district court's summary judgment ruling de novo, applying the same criteria as the district court." *Turner v. City of Dillon*, 2020 MT 83, ¶ 7, 399 Mont. 481, 461 P.3d 122. "Summary judgment is proper only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *360 Reclaim, LLC. v. Russell*, 2023 MT 250, ¶ 14, 414 Mont. 328, 540 P.3d 1046. "We view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in their favor." *Kucera v. City of Billings*, 2020 MT 34, ¶ 6, 399 Mont. 10, 457 P.3d 952.

## DISCUSSION

¶13 This case involves the intersection of jurisdictional standing principles and the internal rules of a voluntary membership association, here a fraternal organization with a complex and formally structured system of governance. We have recognized the general rule that courts should not engage in the internal affairs of a voluntary organization. *State v. Hovland*, 118 Mont. 454, 459, 169 P.2d 341, 344 (1946) (evidence from a criminal investigation about whether the defendant was controlling the policies and affairs of a club did not constitute a "violation of the rule prohibiting investigation into the internal affairs of the corporation in other than quo warranto proceedings."). Other courts have stated

---

[2] Before granting Grand Lodge's second motion for summary judgment, the District Court granted D.A. Davidson's request to withdraw as a party to the action, without prejudice, pending resolution of the underlying dispute between Grand Lodge and Slaybaugh.

8

variations of this principle. "As a general rule, courts refrain from interfering in the internal affairs of voluntary associations." *Anderson v. Enterpr. Lodge No. 2*, 906 P.2d 962, 966 (Wash. Ct. App. 1995) (citing *Grand Aerie, Fraternal Or. of Eagles v. Nat'l Bank*, 124 P.2d 203, 205 (Wash. 1942)). "Fraternal organizations make their own laws and regulations, and courts ordinarily enforce them." *Golden Lodge No. 13 v. Grand Lodge of the Indep. Order of Odd Fellows of Colo.*, 80 P.3d 857, 859 (Colo. App. 2003). "[I]t is not for the jury to interpret the constitution of the union, nor will the courts interfere with the interpretation placed upon such a constitution by its officers and agents unless such interpretation is arbitrary and unreasonable." *Anderson*, 906 P.2d at 966; *see also Fla. High Sch. Ath. Assoc. v. Melbourne Cent. Catholic High Sch.*, 867 So. 2d 1281, 1290 (Fla. Dist. Ct. App. 2004). However, "[a]lthough courts generally refrain from interfering with the internal affairs of voluntary organizations, such organizations may seek enforcement of their rules in the civil courts if a dispute involves property rights or is otherwise judicially cognizable." *Golden Lodge No. 13*, 80 P.3d at 859 (citing *Anderson*, 906 P.2d 962); *see also Blackshire v. NAACP*, 673 N.E. 2d 1059, 1061 (Ill. Ct. App. 1996) ("The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, fraud, collusion or arbitrariness, be accepted by the courts as conclusive."). Here, we are not faced with ambiguity about the applicable provisions of the Constitution and Code of Grand Lodge that would require interpretation, but only the need to determine Slaybaugh's standing to bring his claims against Grand Lodge given the governance and uncontested structure of the organization.

9

¶14 "[S]tanding is a threshold, jurisdictional requirement of every case." *Bryan v. Yellowstone Cnty. Elementary Sch. Dist. No. 2*, 2002 MT 264, ¶ 19, 312 Mont. 257, 60 P.3d 381. "Standing is one of several justiciability doctrines which limit Montana courts, like federal courts, to deciding only 'cases' and 'controversies.'" *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 29, 360 Mont. 207, 255 P.3d 80. "[I]n Montana, to meet the constitutional case-or-controversy requirement, the plaintiff must clearly allege a past, present, or threatened injury to a property or civil right." *Heffernan*, ¶ 33 (citing *Bd. of Trustees v. Cut Bank Pioneer Press*, 2007 MT 115, ¶ 15, 337 Mont. 229, 160 P.3d 482). "Furthermore, the injury must be one that would be alleviated by successfully maintaining the action." *Heffernan*, ¶ 33. Accordingly, "[a] court lacks power to resolve a case brought by a party without standing—i.e., a personal stake in the outcome—because such a party presents no actual case or controversy." *In re Adoption of N.P.M.*, 2020 MT 33, ¶ 10, 399 Mont. 1, 457 P.3d 962. Thus, in the context of this case, as the District Court stated, "it is not enough for a plaintiff merely to allege that a voluntary association acted arbitrarily or in bad faith or did not follow its rules or procedures; rather, the action complained of must have allegedly injured or threatened to injure a legally recognized right of the plaintiff's."

¶15 Slaybaugh's arguments overlap, but he essentially argues that standing is established either because Whitefish Lodge itself has standing, that he has standing to act on behalf of Whitefish Lodge, or that he has individual standing to bring the claims pled against Grand Lodge. Slaybaugh first argues that Whitefish Lodge itself has standing because Whitefish Lodge sustained a past, present, or threatened injury based upon the allegedly unlawful taking of its $180,000. However, the problem with this contention is

10

that Whitefish Lodge is not a party in this litigation. As Grand Lodge argues, Whitefish Lodge was uncontestably dissolved as a lodge pursuant to the Constitution and Code, and therefore no longer exists. As Slaybaugh's briefing acknowledges, because of the revocation of its charter, Whitefish Lodge cannot appear in the litigation. "In deciding whether a *litigant* has standing, we must determine whether the litigant whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." *Geil v. Missoula Irr. Dist.*, 2002 MT 269, ¶ 27, 312 Mont. 320, 59 P.3d 398 (emphasis added). Generally, a plaintiff "'may assert only her own . . . rights' and must have 'a personal stake in the outcome of the controversy at the commencement of the litigation.'" *Sagorin v. Sunrise Heating & Cooling*, *LLC*, 2022 MT 58, ¶ 9, 408 Mont. 119, 506 P.3d 1028 (quoting *Heffernan*, ¶¶ 30, 33). Because Whitefish Lodge is not itself a litigant asserting its own legal rights, any claimed injury it has sustained does not provide a basis to establish standing.

¶16 Slaybaugh then argues in his briefing, as he did in the District Court, that Whitefish Lodge "has associational standing for all the remaining members" of the Lodge. Associational standing "is an exception to the general prohibition on a litigant's raising a third party's legal rights." *Heffernan,* ¶ 44. "An organization may have standing in either of two ways: it may file suit on its own behalf to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy, or it may assert the rights of its members under the doctrine of associational standing." *Heffernan*, ¶ 42. We have held that an association has standing to bring a lawsuit on behalf of its members when "(a) at least one of its members would have standing to sue in his or her

own right, (b) the interests the association seeks to protect are germane to its purpose, and (c) neither the claim asserted nor the relief requested requires the individual participation of each allegedly injured party in the lawsuit." *Heffernan*, ¶ 43. However, our associational standing cases hold that organizations are entitled to vindicate the individual rights of their constituent members, not the other way around, as Slaybaugh argues here. *See*, *e.g.*, *Heffernan*, ¶¶ 46-47. Slaybaugh cites no authority for the proposition that he can proceed "as," or in the shoes of, Whitefish Lodge under associational standing.

¶17 As the District Court clarified, the real issue "is not whether [Whitefish Lodge] has standing to bring the claims in this case, [but] whether *Slaybaugh* has standing to assert those claims on behalf of" Whitefish Lodge (emphasis in original). Slaybaugh thus argues he has standing to bring the claims against Grand Lodge because, under Montana Rule of Civil Procedure 23.1, he can bring a derivative claim to enforce the legal rights of Whitefish Lodge, an unincorporated association. Rule 23.1 "applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce." M. R. Civ. P. 23.1(a). Grand Lodge answers that Slaybaugh's Rule 23 argument was not raised in the District Court and thus was not preserved for appeal. More specifically, Grand Lodge argues that Rule 23.1 contains pleading requirements for a derivative action that must be "state[d] with particularity," M. R. Civ. P. 23.1(b)(3), and that Slaybaugh did not provide the requisite allegations in his pleadings. In reply, Slaybaugh argues that, "in essence," his complaint was alleging derivative standing, and

12

that, in any event, standing is a jurisdictional issue that can be raised at any time in litigation, and is an exception to the rule against raising new issues on appeal.

¶18 Slaybaugh's pleadings make clear that he was not stating a derivative action claim in a representative capacity under Rule 23.1. He alleged a personal right, as a Mason, to "ensure that [Grand Lodge] follows the Code and that his lodge and its assets are not unfairly taken by [Grand Lodge]." Rule 23.1 pertains to rights an association may itself assert but has failed to do so, and requires alleging "with particularity" the effort made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons that the action was not obtained, or the effort was not made. M. R. Civ. P. 23.1(b). It is a type of action. *See Associated Mgmt. Servs. v. Ruff*, 2018 MT 182, ¶ 45, 392 Mont. 139, 424 P.3d 571 ("A derivative action is 'a civil suit' asserted by one or more shareholders, or the board of directors, against the corporation or board to adjudicate or enforce a right of the corporation as a whole. *See* § 35-1-541, MCA."). Rule 23.1 and derivative actions were not mentioned or discussed at any point in the District Court.

¶19 Slaybaugh's reliance on the "standing exception" allowing a new issue on appeal is unavailing in this context. While it is correct that "[s]tanding is a threshold requirement in every case which we must address and decide *sua sponte* even if it is not raised by a litigant," *In re K.H.*, 2012 MT 175, ¶ 23, 366 Mont. 18, 285 P.3d 474, that does not authorize parties to advance entirely new standing theories for the first time on appeal. The exception allows courts to consider the jurisdictional issue despite the failure to previously raise it in the litigation. *See Baxter Homeowners Ass'n v. Angel*, 2013 MT 83, ¶ 14, 369

13

Mont. 398, 298 P.3d 1145; *Bryan*, ¶¶ 18-19; *State v. Abe*, 2001 MT 260, ¶ 14, 307 Mont. 233, 37 P.3d 77; *Armstrong v. State*, 1999 MT 261, ¶ 4, 296 Mont. 361, 989 P.2d 364. Here, the litigation has been focused on Slaybaugh's standing from the beginning, raised by Grand Lodge before Slaybaugh filed his first pleading. Standing was squarely at issue before the District Court, which entered an extensive order addressing all of Slaybaugh's claims to standing. The rule against addressing new legal theories raised for the first time on appeal is appropriately applied here. *See Somers v. Cherry Creek Dev., Inc.*, 2019 MT 101, ¶ 20, 395 Mont. 389, 439 P.3d 1281. Otherwise, the exception could be used to extend litigation indefinitely by raising additional standing theories, as Slaybaugh is attempting to do here.

¶20 Slaybaugh also argues his standing to act on behalf of Whitefish Lodge is established because he occupied the status of a fiduciary for the Lodge, which he contends is based on his appointment or designation by the Lodge to oversee the D.A. Davidson investment account when it was opened in 2013. While Slaybaugh did allege this status was based in part upon his position as a signatory on the D.A. Davidson account, he argues the District Court erred by too narrowly construing this argument as premised only on his role as an account signatory, and not the greater account responsibilities that had been delegated to him.

¶21 Slaybaugh's claim to standing based upon a claimed fiduciary status is undermined by the summary judgment record. The email letter in January 2020 from Blystone, then head of Whitefish Lodge, withdrew not only "signing authority" by anyone except for the Lodge's elected officers, but also withdrew authority "to direct the lodge's investment

14

account." The letter further directed that the Lodge "will conduct a financial review of its investments via third party," that there would be an "[i]mmediate disposal of the Pitney Bowes investment," and that funds would be "reinvested as recommended by a financial advisor." The letter explicitly identified the Lodge's elected officers as the Worshipful Master, Senior Warden, and Junior Warden positions, none of which Slaybaugh held. Consequently, any authority Slaybaugh could have claimed as the Lodge's appointed account overseer was terminated prior to the time Whitefish Lodge's charter was arrested by the Grand Master.[3] Further, as the District Court noted, Slaybaugh has never made clear how his previous authority to oversee the account would have also delegated authority for him to legally challenge, on behalf of Whitefish Lodge, Grand Lodge's arrest and revocation of the Lodge's charter. As the District Court stated, the Code does not permit a member of the Lodge to initiate or conduct business on behalf of the Lodge individually, but only upon authorization approved by a formal lodge meeting.

¶22 Finally, Slaybaugh offers several arguments on the essential premise that the revocation of Whitefish Lodge's charter violated the Masonic Constitution and Code, and these violations impacted his individual rights and privileges as a Mason. We have explained that "the relationship between a member of a nonprofit corporation and that corporation is contractual in nature." *Walker v. Helena Ass'n of Realtors, Inc.*, 2000 MT 343, ¶ 16, 303 Mont. 224, 15 P.3d 414. "This contractual relationship through corporate

---

[3] There is no allegation in the record or briefing that Slaybaugh's oversight of the investment account was inappropriate in any way.

bylaws extends itself into the areas of correlative rights and duties," because upon voluntarily "becoming a member of a corporation or association and subscribing to its bylaws, one thereby agrees to submit to its rules and regulations." *Walker*, ¶ 16. We thus review Slaybaugh's individual standing claim through the framework of contract law as applied to a membership association's governance, upon the summary judgment record.

¶23 The Masonic Code provides that "[t]he surrender or revocation of the charter of a lodge, when declared by Grand Lodge, shall be conclusive upon the lodge and its members. . . ." Code § 22070. No provision of the Code or Constitution expressly confers a legal right upon individual members to challenge a revocation decision made by Grand Lodge, or to claim entitlement to a lodge's property or funds. *See* Code § 22070 (upon revocation, "all of its funds" and "property of every kind" shall be transmitted to the Grand Secretary). Thus, Slaybaugh cannot claim a property interest in Whitefish Lodge's property or funds to assert standing, and he does not do so. *Golden Lodge No. 13*, 80 P.3d at 859.

¶24 Slaybaugh contends that his rights and privileges as a Mason were damaged by the revocation of Whitefish Lodge's charter, which he alleges was done in violation of the Code. However, under the Code, neither an arrest nor revocation of a lodge charter itself revokes a Master Mason's good standing in the organization. Rather, "[t]he status of each member in good standing of a lodge shall be that of a non-affiliated Master Mason in good standing" upon the arrest, revocation or surrender of a lodge's charter. Code § 35010. As such, it is without dispute that the arrest and revocation of Whitefish Lodge's charter did not foreclose Slaybaugh's opportunity to continue as a Master Mason and to affiliate with

16

another lodge. Consistent therewith, Slaybaugh's complaint alleges that all the damages caused by the allegedly violative arrest and revocation process employed by Grand Lodge, in each of the claims, were suffered by Whitefish Lodge, and not by Slaybaugh himself. As we have held above, Slaybaugh did not establish standing to bring a claim on behalf of the Lodge.

¶25 What remains is Slaybaugh's allegation that the arrest and revocation of the Whitefish Lodge charter was nonetheless done in violation of the Code, which putatively could justify an action alleging injury premised upon the exception to the general rule that courts do not interfere in the internal affairs of a membership organization, on such grounds as "the absence of mistake, fraud, collusion or arbitrariness," *Blackshire*, 673 N.E. 2d at 1061, or as being an "arbitrary and unreasonable" interpretation of the governing documents. *Anderson*, 906 P.2d at 967. We decline to further define a standard here, however, because we conclude such a claim was not supported by the summary judgment record. Slaybaugh alleges Grand Lodge acted with fraudulent purposes, but the record lacks evidence establishing a prima facie case of the same. Notably, the process of arrest and revocation of Whitefish Lodge's charter was initiated by Slaybaugh's complaint to the Grand Master about an alleged ultra vires gifting of Lodge funds to a religious charity, including Slaybaugh's email to him that the actions taken were "totally corrupt." While Slaybaugh's stated cross claims may well have been sufficient to facially sustain an alleged exception to the general rule deferring to the internal affairs of a membership organization, we conclude that the claims and Slaybaugh's standing to bring them were not sustained upon completion of discovery for purposes of summary judgment.

17

¶26    Affirmed.

                                        /S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON